IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CARNELL CHAMBERLAIN,

Petitioner

**RECEIVED**
MAR 2 5 2013

CIVIL ACTION

v.

NO. 13-790

MARIROSA LAMAS, ET AL.,

Respondents

## MEMORANDUM OF LAW AND SUPPORTING FACTS FOR HABEAS PETITION

Petitioner is a state prisoner incarcerated at the State Correctional Institution at Bellefonte, Pennsylvania (**SCI-ROCKVIEW**) at CP-51-CR-0409611-2003 and the Petitioner seeks relief from the judgment entered on October 23, 2003.

## I.   PROCEDURAL HISTORY

On October 23, 2003, a jury found the Petitioner guilty of first degree murder and conspiracy to commit murder, along with related offenses. Thereafter, the Honorable Sheila Woods-Skipper imposed a mandatory sentence of life, as to the first degree murder and current sentence of 5-10 years as to the conspiracy conviction.

The Petitioner filed a timely Notice of Appeal to the Pennsylvania Superior Court and on April 27, 2005, that court

affirmed judgment of sentence. The Pennsylvania Supreme Court denied allowance of appeal on March 28, 2006.

On December 6, 2006, the Petitioner filed a timely PCRA petition. Thereafter, counsel was appointed pursuant to Pa.R.Crim.P. 904. Counsel filed an amended petition on the Petitioner's behalf.

On December 11, 2007, the PCRA court sent a notice of intent to dismiss pursuant to Pa.R.Crim.P. 907 and counsel did not file a response.

On January 18, 2008, the PCRA court entered a final order dismissing petition without a hearing. Thereafter, the Petitioner filed a counseled appeal to the Superior Court. However, due to PCRA counsel's ineffectiveness the petitioner requested a **Grazier** hearing to represent himself pursuant to Commonwealth v. Grazier, 713 A.2d 81 (1998).

On September 29, 2008, the PCRA court held an on-the-record colloquy, to the Petitioner's waiver of counsel on appeal and gave the Petitioner permission to proceed pro se.

On November 10, 2008, the Petitioner filed a pro se petition for remand in the Superior Court, due to PCRA counsel's failure to raise several ineffective counsel claims that, occurred during Petitioner's trial.

On December 1, 2008, the Superior Court entered an order allowing the Petitioner to raise the claims in his brief on appeal.

On April 29, 2009, the Superior Court vacated the order entered on January 18, 2008, and remanded back to the PCRA court for an evidentiary hearing within as to the non-presence of trial

counsel during reinstruction to the jury and further allowing Petitioner to raise additional claims of ineffectiveness of counsel which PCRA counsel failed to raise. The court further noted that this should occur within 30 days from the remand of the record.

On May 28, 2009, the Commonwealth sought an allowance of appeal to the Pennsylvania Supreme Court and on December 30, 2009, the Pennsylvania Supreme Court denied that request.

On February 1, 2010, based on the Superior Court's order entered on April 29, 2009, the Petitioner filed an amended PCRA petition and the PCRA court appointed counsel. As of this writing (3 years later) there has been no hearing. In fact, there has been a lot of unknown continuances, which does not comport with the Superior Court order to conduct an evidentiary hearing. The instant petition and memorandum of law followed.

## II.   JURISDICTIONAL REVIEW

### EXHAUSTION

Under ordinary circumstances, a federal court may not entertain a petition for a writ of habeas corpus unless the petitioner has first presented each claims to the state's highest tribunal. Rose V. Lundy, 455 U.S. 509,515-16 (1982). Exhaustion, however, is not a jurisdictional matter but a matter of comity. The Court of Appeals has held that, "incusable or inordinate delay by the state in processing claims for relief may render the state remedy effectively unavailable." See Wojtczak V. Fulcomer, 800 F.2d 353,354 (3d Cir.1986).

In the instant matter is has been over 3 years, without a hearing directed by the appellate courts. Specifically, since the

Petitioner filed his amended petition, there has been numerous continuances. In short, it should not take 3 years to have a hearing that was directed by the appellate court upon remand of the record. The petitioner has complained and complained that the appointed attorney has not pushed the PCRA court to have a hearing nor has the PCRA court directed a hearing to occur.

The Court of Appeals has stated, that 33 months was to long to adjudicate a PCRA. Further, citing other delayed cases, which exhaustion was excused. See Lee V. Stickman, 357 F.3d 338,341 (3d Cir.2004).

As such, this Court should excuse exhaustion and proceed to the merits of the claims.

**ARGUMENT**

**GROUND ONE.**

**THE PETITIONER WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE COUNSEL WHEN TRIAL COUNSEL FAILED TO REQUEST A MISTRIAL, WHEN HE LEARNED THAT THE TRIAL COURT REINSTRUCTED THE JURY ON FIRST AND THIRD DEGREE MURDER, WITHOUT THE PRESENCE OF TRIAL COUNSEL.** (See attached amended PCRA petition at 5-15)

**GROUND TWO.**

**TRIAL COUNSEL AND CO-DEFENDANT COUNSEL WAS INEFFECTIVE FOR FAILURE TO OBJECT WHEN THE TRIAL COURT FAILED TO GIVE AN EFFECTIVE COLLOQUY WHEN THE PETITIONER UNKNOWINGLY WAIVED HIS RIGHT TO TRIAL COUNSEL NOT BEING PRESENT WHEN THE TRIAL COURT REINSTRUCTED THE JURY, IN REGARDS TO THE JURY REQUESTING "TO CLARIFY THE DIFFERENCE BETWEEN FIRST AND THIRD DEGREE MURDER."** (See attached amended PCRA petition at 16)

GROUND THREE.

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILURE TO OBJECT AND REQUEST A MISTRIAL AND OR CURATIVE INSTRUCTION WHEN THE PROSECUTOR QUESTIONED AND MADE REFERENCES TO THE PETITIONER'S PRE-ARREST AND POST ARREST SILENCE IN VIOLATION OF THE FIFTH AMENDMENT TO REMAIN SILENT. (See attached amended PCRA petition at 17-20)

GROUND FOUR.

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILURE TO COMPEL THE COMMONWEALTH TO PRODUCE THE MEDICAL EXAMINER, WHO DID THE AUTOPSY ON THE VICTIM, WHICH DENIED THE PETITIONER HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE CROSS-EXAMINATION. (See attached amended PCRA petition at 20-21)

The above grounds were presented to the state court, however, as indicated, the court has yet to move on the claims as directed by the appellate court.

The Petitioner has attached the amended petition to this memorandum of law, for ease on the court and unnecessary recitation.

### CONCLUSION

The Petitioner request the relief of a new trial condition within 120 days or grant the writ unconditionally.

Respectfully submitted

CARNELL Chamberlain

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,     CP-51-CR-0409611-2003
        Respondent

**PCRA PETITION**

**HON. SHEILA WOODS-SKIPPER**

V.

CARNELL CHAMBERLAIN
        Petitioner

RECEIVED

FEB 0 4 2010

APPEALS/POST TRIAL

**PCRA PETITION FILED PURSUANT
TO SUPERIOR COURT ORDER ENTERED
ON APRIL 29, 2009, REMANDING
FOR AN EVIDENTIARY HEARING
AND AMENDED PETITION REQUESTING
RELIEF OF A NEW TRIAL UNDER
42 PA.C.S.A. §9541-9546 AND
APPOINTMENT OF COUNSEL FOR THE
PURPOSE OF THE EVIDENTIARY
HEARING TO BE HELD.**

Filed on Behalf of:

Carnell Chamberlain, PRO SE

GA-8233
Box A
Bellefonte, PA 16823

**SCI-ROCKVIEW**



IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, PENNSYLVANIA
CRIMINAL DIVISION


COMMONWEALTH OF PENNSYLVANIA,                    CP-51-CR-0409611-2003
                    Respondent


            v.


        CARNELL CHAMBERLAIN,
                    Petitioner


**PCRA PETITION FILED PURSUANT TO SUPERIOR COURT ORDER ENTERED
ON APRIL 29, 2009, REMANDING FOR AN EVIDENTIARY HEARING AND
AMENDED PETITION REQUESTING RELIEF OF A NEW TRIAL UNDER
42 PA.C.S.A §9541-9546 AND APPOINTMENT OF COUNSEL FOR
THE PURPOSE OF THE EVIDENTIARY HEARING TO BE HELD**

AND NOW, comes the Petitioner, Carnell Chamberlain, who files
the within petition and represents the following:


1.  On ~~August~~ October 23, 2003, a jury found the Petitioner guilty of
first degree murder and conspiracy to commit murder, along with
related offenses. Thereafter, the Honorable Sheila Woods-Skipper
imposed the mandatory sentence of life, as to the conviction of
first degree murder and concurrent sentences of 5-10 years as to
the the conspiracy conviction, including current sentence as to
the other related offenses.

2.  The Petitioner subsequently filed a direct appeal to the
Pennsylvania Superior Court, which affirmed judgment of sentence.

3.  In December 2006, the Petitioner filed a timely pro se
PCRA petition, which challenged the effectiveness of trial



counsel. Thereafter, attorney John P. Cotter was appointed pursuant to Pa.R.Cr.P. 904. Attorney Cotter, then filed an amended petition on the Petitioner's behalf. Among, the claims raised by attorney counsel included, that trial counsel was ineffective for failure to request a mistrial, when the trial court re-instructed the jury on first and third degree murder without the presence of trial counsel.

4. On December 11, 2007, the PCRA court sent a notice of intent to dismiss and attorney Cotter,(herein after referred as PCRA counsel) did not file a response.

5. On January 18, 2008, the PCRA court denied the petition without a hearing.

6. Thereafter, the Petitioner filed a an appeal to the Superior Court, through PCRA counsel. However, during the appeal the Petitioner requested for a GRAZIER hearing to represent himself on appeal. Commonwealth V. Grazier, 713 A.2d 81 (1998).

7. On September 29, 2008, the PCRA court held an on-the-record colloquy, to the Petitioner's waiver of counsel on appeal,, concluding that the Petitioner had permission to proceed pro se.

8. On November 10, 2008, the Petitioner filed a petition for remand in the Superior Court, due to PCRA counsel's failure to raise several ineffective counsel claims, that occurred during the trial proceedings.

9. On December 1, 2008, the Superior Court gave the Petitioner permission to raise the claims in Petitioner brief in that Court.

10. Thereafter, the Petitioner raised the claims in

Petitioner's appellant brief. The Commonwealth followed with a responsive brief.

11.  On April 29, 2009, the Superior Court disagreed with the Commonwealth and ruled in favor of the Petitioner, concluding, that the Petitioner was entitled to an evidentiary hearing as to the claim, "trial counsel was ineffective for failure to request a mistrial, when the trial court re-instructed the jury on first and third degree murder, without the presence of trial counsel." Further concluding, that the Petitioner could file an amended petition raising additional claims that PCRA counsel failed to raise on Petitioner's behalf. This also included for the PCRA court to address the amended issues at an evidentiary hearing.

12.  ON May 28, 2009, the Commonwealth filed a petition for an Allowance of Appeal. Thereafter, the Petitioner filed a petition stating reasons why the Pennsylvania Supreme Court should deny the request for Allowance of Appeal.

13.  Finally, on December 30  2009, the Pennsylvania Supreme Court denied Allowance of Appeal. The instant petition followed.

**CLAIMS TO ADDRESS AT THE EVIDENTIARY HEARING REQUESTING NEW TRIAL**

I.  TRIAL COUNSEL WAS INEFFECTIVE FOR FAILURE TO REQUEST A MISTRIAL, WHEN HE LEARNED THAT THE TRIAL COURT REINSTRUCTED THE JURY ON FIRST AND THIRD DEGREE MURDER, WITHOUT THE PRESENCE OF TRIAL COUNSEL.

(PCRA COUNSEL WAS INEFFECTIVE FAILURE TO RAISE THE FOLLOWING:)

II.  TRIAL COUNSEL AND CO-DEFENDANT COUNSEL WAS INEFFECTIVE FOR FAILURE TO OBJECT WHEN THE TRIAL COURT FAILED TO GIVE AN EFFECT

COLLOQUY WHEN THE PETITIONER UNKNOWINGLY WAIVED HIS RIGHT TO
TRIAL COUNSEL NOT BEING PRESENT WHEN THE TRIAL COURT REINSTRUCTED
THE JURY, IN REGARDS TO THE JURY REQUESTING "TO CLARIFY THE
DIFFERENCE BETWEEN FIRST AND THIRD DEGREE."

III.   TRIAL COUNSEL WAS INEFFECTIVE FOR FAILURE TO OBJECT AND
REQUEST A MISTRIAL OR CURATIVE INSTRUCTION WHEN THE PROSECUTOR
QUESTIONED AND MADE REFERENCES TO THE PETITIONER'S PRE-ARREST AND
POST ARREST SILENCE.

IV.   TRIAL COUNSEL WAS INEFFECTIVE FOR FAILURE TO COMPEL THE
COMMONWEALTH TO PRODUCE THE MEDICAL EXAMINER, WHO DID THE AUTOPSY
ON THE VICTIM WHICH DENIED THE PETITIONER THE RIGHT TO EFFECTIVE
CROSS-EXAMINATION.

CLAIM I.

A person accused of a crime and the subject of a criminal
prosecution has a constitutional right to counsel pursuant to the
Sixth Amendment of the United States Constitution and Article I,
§ 9 of the Pennsylvania Constitution. Commonwealth V. Johnson,
574 Pa. 5, 828 A.2d 1009 (Pa.2003). "An accused's right to be
represented by counsel is a fundamental component of our criminal
justice system." United States V Cronic, 466 U.S. 648,653, 104
S.Ct. 2039, 80 L.Ed.2d 657 (1984); see also Powell V. Alabama,
287 U.S. 45,69, 53 S.Ct. 55, 77 L.Ed. 158 (1932) (accused
"requires the guiding hand of counsel at every step in the
proceedings against him.")

This right of counsel's presence is required at every stage of

a criminal proceeding where substantive rights of the accused may
be effected. See Mempa V. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19
L.Ed.2d 336 (1967); White V. Maryland, 373 U.S. 59, 83 S.Ct.
1050, 10 L.Ed.2d 193 (1963) (per curiam order); Hamilton V.
Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961);
Commonwealth V. Holzer, 480 Pa. 93, 389 A.2d 101,105 (Pa.1978)
"There is no doubt that the right of counsel applies to all
'critical stages' of a criminal proceeding." A critical stage in
a criminal proceeding is characterized by an opportunity for the
exercise of judicial discretion or when certain legal rights may
be lost if not exercised at that stage. See Mempa, at 135, 88
S.Ct. 254 (right to counsel in probation revocation);
Commonwealth V. Phillips, 208 Pa.Super. 121, 220 A.2d 345,348
(Pa.Super.1966), aff'd. per curiam, 424 Pa. 641, 226 A.2d 863
(Pa.1967). In Pennsylvania, trial courts have broad discretion in
phrasing their charges, Commonwealth V. Hawkins, 549 Pa. 352, 701
A.2d 492,511 (Pa.1997); during this stage, counsel may object to
the instructions or suggest an alternative wording. As such, jury
instructions are a "critical stage" in a criminal trial. See
Rogers V. United States, 422 U.S. 35,38-39, 95 S.Ct. 2091, 45
L.Ed.2d 1 (1975); Siverson V. O'Leary, 764 F.2d 1208,1214 (7th
Cir.1985); Ellis V. United States, 313 F.3d 636,642-43 (1st
Cir.2002); see also Commonwealth V. Baker, 511 Pa. 1, 511 A.2d
777,789 n. 8 (Pa.1986) (in dicta, stating defendant did not
receive representation by counsel when trial judge sent jury back
for further deliberations without notice and consultation of
counsel)

Here in the instant case, after the conclusion of the trial
court original charge to the jury, the following exchanged
occurred: (August 22, 2003, trial transcript, vol. 7 at 136)

6

THE COURT: As to statements---

MR. PHILLIPS (PROSECUTOR): No.

MR. MIRARCHI (TRIAL COUNSEL): Well, judge, statements are not to go out.

MR. MANDELL (CO-DEFENDANT COUNSEL): No, no statements should go out.

THE COURT: Okay. All right. So, I will call you if they ask for the pictures or the sketch. Anything else?

If there's an issue, we will know where to find you, counsel. You should leave numbers. I know where you will be.

MR. MIRARCHI: Yes.

THE COURT: Very well. So, you are excused to find your way down to your other courtroom, Mr. Mirarchi.

The trial court stated that she would contact the Appellant's trial counsel, if an issue would come up. However, when an issue did come up with the jury, wanting to be reinstructed on first degree and third degree murder, the trial court did not contact Appellant's trial counsel but instead contacted the Appellant, as the following exchanged occurred: (October 22, 2003, trial transcripts vol. 7 at 137-138)

THE CRIER (COURT): Mr. Chamberlain, the jury has a question in that they would like me to redefine first-degree and third-degree murder.

As you probably aware, your lawyer is tied up in another matter.

Now, I can wait until I can get him here before I respond to the question, but since it is merely a re-reading of the instruction that I have already given them, do you have any objection to Mr. Mandell standing in for Mr. Mirarchi--

DEFENDANT CHAMBERLAIN: No, Your Honor.

7

THE COURT: -- for the handling of that?

DEFENDANT CHAMBERLAIN: No.

THE COURT: So, you agree to proceed in that fashion?

DEFENDANT CHAMBERLAIN: Yes.

THE COURT: I would just explain to the jury that your lawyer is busy in another courtroom; rather than delay them, we decided to recharge.

Is that okay with you?

DEFENDANT CHAMBERLAIN: Yes.

The trial court actions denied the Petitioner due process rights under several components; (1) the trial court should not have presented any options to the Petitioner without first contacting his trial counsel; (2) the trial court should not have permitted dual representation by co defendant counsel representing the Petitioner although for a short period, that period was during a critical stage of the proceedings; and (3) the trial court represented to the Petitioner that she would just be rereading what she already read to the jury, however, the Commonwealth asked for a further instruction, in which the Petitioner did not agree to nor was he told by the trial court. The trial court failed to explain the risk of not having his own trial counsel, who may object and preserve any issues but with out your trial counsel here to object, the issue may be waived or lost for ever.

The Pennsylvania Supreme Court in Johnson, supa id at A.2d 1015, stated the Court is requires to presume a defendant is prejudice, during the denial of counsel by the trial court during reiterative jury instructions. See Geders V. United States, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) (court order

directing defendant not to consult with his attorney durin

overnight recess per se violated Sixth Amendment right to

counsel); Brecht V. Abrahamson, 507 U.S. 619,629-30, 113 S.Ct.

1710, 123 L.Ed.2d 353 (1993) ("The existence of such

defects—deprivation of the right to counsel, for

example---requires automatic reversal of the conviction because

they infect the entire trial process.")

The fact that the trial court asked and permitted co-defendant

counsel to stand in for Petitioner trial consel, did not remedy

the right to have his own trial counsel present.

The United States Court of Appeals for the Third Circuit

stated "that the goal of the judicial process is not to decide

cases as quickly and as inexpensively as possible," United States

V. Boscia, 573 F.2d 827,833 (3rd Cir.1978)

Dual representation cases make several principles clear.

First, "if, in the representation of more than one defendant, a

conflict of interest arises, the mere existence of such conflict

vitiates the proceedings, even though no actual harm results. The

potentiality that such harm may result, rather than that such

harm did result, furnishes the appropriate criterion.

Commonwealth V. Breaker, 456 Pa. 341,344-45, 318 A.2d 354,356

(1974) citing Commonwealth ex rel. Whiting V. Russel, 406 Pa.

45,48, 176 A.2d 641,643 (1962)

In Glasser V. United States, 315 U.S. 60, 62 S.CT. 457, 86

L.Ed.2d 680 (1942), this Court recognized that such assistance is

a component of the Sixth Amendment right to effective assistance

of counsel. This right is so fundamental in our adversarial

system of criminal justice that public defender offices in many jurisdictions have rules precluding representation of more than one of the criminal defendants involved in the same offense. Under the Federal Rules of Criminal procedures and under the rules governing professional responsibility, **consent of a criminal defendant** is a necessary prerequisite to joint representation, and trial court inquiry into whether the defendant has made a knowing and voluntary waiver of his right to conflict-free representation is strongly encouraged, if not required.

Courts have generally adopted a prima facie prophylactic rule which prohibits attorneys from simultaneously representing clients with adverse interests, even in unrelated matters. The Model Rules of Professional Conduct reflect this approach and provide that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest... unless, among other things, **each affected client gives informed consent**, confirmed in writing" Jones v. Polk, 401 F.3d 257 (C.A.4 (N.C.) 2005)

Under Pennsylvania Rules of professional Conduct, Rule 1.7.(4) provides that "each affected client gives informed consent" to dual representation where a conflict mat exist.

Other jurisdictions have adopted the same procedure. Kentucky Rule of Criminal procedure 8.30 directly addresses the issue of an attorney's representation of multiple co-defendants. Rule 8.30 is attended to protect defendants from the potential consequences of dual representation and assure that they are advised of potential conflicts of interest. Rule 8.30(1) prohibits dual

representation of persons charged with the same offenses unless:

(1) the judge... explains to the defendant or defendants the possibility of a conflict of interest on the part of the attorney in that what may be or seem to be in the best interest of one client may not be in the best interests of another, and (b) each defendant in the proceeding executes and causes to be entered in the record a statement that the possibility of a conflict of interests on the part of the attorney has been explained to the defendant by the court and that the defendant nevertheless desires to be represented by the same attorney. Boykin V. Webb 541 F.3d 638 (C.A.6 (Ky.) 2008)

In the instant case the PCRA court/trial court, recognized that an accused has a constitutional right during all critical stages of criminal proceedings. However, the PCRA court/trial court concluded that the Petitioner rejected counsel by agreeing to proceed without counsel.

However, the PCRA court/trial court failed to consider if this was knowingly and intelligent waiver of counsel, especially when the trial court did not conduct or explain the consequences of trial counsel not being present at this critical stage. Secondly, the trial court had a duty and the responsibility to contact the Petitioner's trial counsel, as it was agreed to by trial counsel. The trial court asked trial counsel to leave a number, so he could be reached, if an issue would come up (TT vol.7 at 136).

This representation, clearly did not indicate for the trial court, to authorize co-defendant counsel to represent the Petitioner, if Petitioner's trial counsel was unavailable. The

Petitioner's Sixth Amendment right was still violated when the trial court "questioned the Petitioner" without counsel being present. See Fellers V. U.S., 540 U.S. 519, 14 S.Ct. 1019, 157 L.Ed.2d 1016 (U.S. 2004) citing Massiah V. U.S., 377 U.S. 201, 206, 84 S.Ct. 1199, 12 L.Ed.2d 246 and MIchigan V. Jackson, 475 U.S 625, 106 S.Ct. 1404, 89 L.Ed.2d 631.

The PCRA court/trial court relied on Commonwealth V. D'Amato, 579 Pa. 490, 519, 856 A.2d 806, 823 (2004), is distinguish from the instant case. The Superior Court expressingly noted this in their decision to remand for an evidentiary hearing. (Superior Court April 29, 2009 decision attached hereto as EXHIBIT A). Clearly, the instant matter falls under Commonwealth V. Johnson, 574 Pa. 5, 15-16, 828 A.2d 1009, 1015-1016 (2003) (holding denial of defendant's constitutional right to counsel by temporarily excluding counsel during reiterative jury instruction was pressumptively prejudicial to defendant and required a new trial).

Most importantly, the trial court stated that the jury wanted to redefine first and third degree murder. (TT vol.7, at 137) However, this is not what the jury requested (TT vol.7, 139); the jury asked to ████████ the ████████ between first and third degree murder. Point being made, is that Petitioner's trial counsel could have and should have explained to the trial court that the jury only requested to know the difference between first and third degree and they did not asked to be reinstructed.

Trial counsel had several options, more specifically, trial counsel could have and should have requested the trial court to answer the question simply stating that "first degree murder

requires a specific intent to kill and third degree requires malice, with no intent to kill, but acted with such a reckless disregard to human life". Likewise, the trial court also added a supplemental request from the prosecutor, in which trial counsel could have and should have objected to. All of this action was beyond the scope of what the jury inquiry was and the Petitioner had the right to have his own trial counsel present during this critical stage.

As explained in the instant matter, there are to many variables of action that trial counsel could have taken and this Court can only reach one conclusion. That is, if the Petitioner was denied his Constitutional right to his own trial counsel, the Petitioner would be entitled to a new trial.

The prejudice is presumed as outlined in Johnson supra.

This Court must consider the following; (1) whether this Court erred by questioning the Petitioner without trial counsel being present as the Sixth Amendment attached; (2) whether this Court erred by not giving an effective colloquy, explaining the potential dangers of waiving counsel at the critical stage; (3) whether this Court erred by permitting co-defendant counsel to stand in for Petitioner's trial counsel, where a potential for conflict of interest existed. If this Court concludes that any of the listed errors occurred, then the Petitioner is entitled to the relief of a new trial, based on trial counsel failure to object and preserve the issue for appellate review.

The constitutional right of the accused to **the assistance of counsel** under the Sixth Amendment has long been recognized to guarantee the **effective assistance of counsel.** That guarantee applies to the State as a component of due process under the Fourteenth Amendment. See Evitts V. Lucey, 469 U.S. 387,394, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Thus, when a **State obtains a criminal conviction in a trial in which the accused is deprived of the effective assistance of counsel, the** State...**unconstitutionally deprives the defendant of his liberty, rendering the accused, "in custody in violation of the Constitution".** Kimmelman V. Morrison, 477 U.S. 365,383, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) quoting Cuyler V. Sullivan, 466 U.S. 335,343, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

A defendant seeking relief on the ground that his trial counsel was ineffective must make two showings: that his counsel's performance was **unreasonably deficient,** and that the deficiency **prejudiced him.** See generally Strickland V. Washington, 466 U.S. 668,687-96, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Pennsylvania Supreme Court, applied the proper test under the Pennsylvania Constitution in Commonwealth V. Pierce, 515 Pa. 153, 527 A.2d 973 (1987). This is commonly known as the "Pierce test", which would require the Appellant to prove the following: (1) the underlying claim of trial counsel's ineffectiveness has arguable merit; (2) trial counsel had no reasonable basis for his actions; and (3) but for trial counsel's ineffectiveness, the results would have been different.

The harmless error standard....which places the burden on the Commonwealth to show that the error did not contribute to the verdict beyond a reasonable doubt is a lesser standard that the [ineffective assistance of counsel], prejudice standard, which requires the defendant to show that counsel's conduct had an **actual adverse effect on the outcome of the proceedings.** This distinction appropriately arises from the difference between a direct attack on error occurring at trial and a collateral attack on the stewardship of counsel. In a collateral attack, the Courts assume that counsel is effective and not every error by counsel can or will result in a constitutional violation of a defendant's Sixth Amendment right to counsel. Commonwealth V. Howard, 538 Pa. 86, 645 A.2d 1300,1307 (Pa.1994).

However, on the same day the United States Supreme Court filed Strickland, it also issued its companion decision in United States V. Cronic, 466 U.S. 648,653-56, 104 S.Ct. 2039,2043-45, 80 L.Ed.2d 657 (1984), acknowledging that certain cases entail a level of inadequacy on part of counsel that is of such a quality that **prejudice is automatically assumed.**

In regards to the instant claim this Court resolve this factor under the presume prejudice standard of Cronic than by reference to Strickland "performance and prejudice test". Cronic stated that, although counsel is ordinarily presumed competent and the burden rest upon the defendant to demonstrate a constitutional violation, **some circumstances are so likely to result in actual prejudice that the cost of litigating their effect in particular cases is unjustified** See Cronic 466 U.S. at 658, 104 S.Ct. at 2046. Thus, the Cronic exception is rooted in the need to ensure a fair trial and the waste of resources entailed in litigating prejudice where the lack of a fair trial is a virtual certainty.

15

**CLAIM II**

This claim falls within claim I, to the extent that once co-defendant counsel erroneously played the role of counsel for the Petitioner, he should have objected to the trial court, failure to give an effective colloquy, in regards to Petitioner's waiver to his trial counsel. Likewise, once trial counsel learned of this fact, he should have objected and requested a mistrial.

As explained in claim I, the court should have explained the consequences of waiving the Petitioner's own trial counsel, therefore the waiver was not valid. Simply stating, that the Court would just be rereading what it had already stated to the jury, was not sufficient for the Petitioner to understand, all that entailed, allowing this to occur with out his trial counsel and the trial court did not explain.

Also this compounded by the fact that the trial court should not have been presenting any questions to the Petitioner without his trial counsel there, as the Sixth Amendment attached.

It is clear that this Court should consider all these factors, when addressing this claim at the evidentiary hearing.

Likewise, the Petitioner incorporates the standards set out in claim I, in regards of ineffective counsel Pierce; Strickland; Cronic

This Court should also conclude that the Petitioner was denied his right to effective counsel, which resulted in prejudice to the Petitioner and grant the only remedy available in the form of a new trial.

**CLAIM III**

In the instant case, there was an arrest warrant for the Petitioner and such would be the start of a criminal investigation that would implicate his right to remain silent.

The following exchange occurred by the prosecutor during direct examination of Detective John Benham: (~~August~~ October 20, 2003, trial transcripts vol.5 at 158)

BY **MR. PHILLIPS** (PROSECUTOR:

Q. Did anybody ever contact you, either from his family **or the defendant, himself**, to indicate that he was going to turn himself in?

A. No, **they** didn't.

Trial counsel should have objected to the prosecutor including the Petitioner's failure to contact the detective to inform him that he would turn himself in. This violated the Petitioner's Fifth Amendment right to remain silent because the Petitioner had no right to contact the detective to explain when he was going to turn himself in.

For the prosecutor to use this fair assertion of a constitutional right, as admission of guilt would fly in the face of the Fifth Amendment.

Trial counsel failure to object to this improper questioning violated the Petitioner's right to effective counsel under the Sixth Amendment.

The Pennsylvania Supreme Court addressed prosecutor commenting

on pre-arrest silence in Commonwealth V. Bolus, 545 Pa. 103, 680
A.2d 839 (1996). That Court explained, where a defendant does not
testify on his own behalf, there should be no reference to his
pre-arrest silence. Furthermore, if the defendant has become the
focus of a criminal investigation or placed under arrest, the
defendant can not be questioned or any reference to his silence
would be a direct violation of the Fifth Amendment.

Likewise, as explained in the instant case the Petitioner was
the focus of a criminal investigation, therefore he had a
constitutional right not to contact the detective.

Trial counsel could have even requested a cautionary
instruction, which the trial court could have and should have
explained to the jury that the Petitioner has a constitutional
right to not contact the detectives under the Fifth Amendment.
However, the jury equated this failure as conscience of guilt, in
which the prosecutor elicited the testimony for.

This Court must consider that this case relied on credibility,
no direct evidence linked the Petitioner to this crime. The
Commonwealth presented (2) witnesses (Jackie Reyes) and (Anna
Vargas Pacan). Ms. Reyes, testified that allegedly the Petitioner
and another individual talked about shooting a person named
"Kareem". However, the deceased name was Curtis Cannon and no
evidence was introduced that the deceased ever used the name of
"Kareem". So at best, even if this testimony was reliable, it did
not establish it was the deceased. This is the only testimony Ms.
Reyes offered.

Next the Ms. Vargas, testified that she was not sure if it was

the Petitioner and her testimony went back and forth, thus making her testimony unreliable.

The Commonwealth presented no other evidence in regards to the Petitioner, other than this prejudicial evidence trying to establish admission of guilt.

These are the factors this Court must consider at this evidentiary hearing, which undoubtfully prejudiced the Petitioner to a fair trial. Likewise, trial counsel could have no strategic reason for failure to object to this testimony, as trial counsel himself knew that this case relied on witness credibility.

Finally, the prosecutor compounded this factor by commenting on the Petitioner's post arrest silence during direct examination of Lieutenant, George McClay, in which the following exchange occurred: (~~August~~ October 20, 2003, trial transcript vol.5 at 63-64)


**BY MR. PHILLIPS:**

Q. Sir, did the defendant ever admit to you, Mr. Chamberlain, that the name he gave, Tyrell Buffet, was incorrect and that the information about the location of the shooting was incorrect, yes or no? Did he ever tell you that?

A. No, he did not.


Now you have (2) different references to the Petitioner's right to remain silent and without a cautionary instruction, the jury had no way of knowing that the Petitioner had the right to remain silent and not present any explanation or defense to the police at the time of arrest. Commonwealth V. Dulaney, 449 Pa. 45, 295 A.2d 328 (1972)

This is followed by a host of other supported cases, such as
Commonwealth V. Clark, 626 A.2d 154 (1993) stating, "it has
firmly exhibited its intention to insure that the post arrest
silence of the accused is not used to his detriment in legal
proceedings," citing Commonwealth V. Turner, 454 A.2d 537 (1982)
(holding that any references to the post arrest silence of the
accused is potentially prejudicial to the accused, Id. at 454
A.2d 540. Such a reference may impermissibly contribute to the
verdict and consequently warrants the granting of a new trial for
the accused.) See also Commonwealth V. Johnson, 788 A.2d 985
(Pa.Super.2001) quoting Doyle V. Ohio, 426 U.S. 610, 618, 96 S.Ct.
2240, 49 L.Ed.2d 91 (1976).

Based on the prosecutor actions and the supported cases, it is
clear that the prosecutor comments as to pre-arrest silence and
post arrest silence, was improper and trial counsel should have
objected.

This Court should as previously indicated consider all these
factors at the evidentiary hearing and conclude that the
Petitioner is entitled to a new trial.

CLAIM IV.

During the Petitioner's trial, the Commonwealth did not
produce the medical examiner (Dr. Lieberman) who did the autopsy
on the deceased. Instead, the Commonwealth produced Dr. Preston,
who did not perform the autopsy and did not have any connection
with the autopsy, other than reading and relying on Dr. Preston
report. (~~August~~ October 20, 2003, trial transcript at 50-58)

This action was in direct violation of the Pennsylvania Supreme Court decision in Commonwealth V. McCloud, 322 A.2d 653 (Pa. 1974). That Court ruled that the medical examiner who prepared the autopsy report must be available for cross-examination.

Trial counsel actions, for failure to object to the Commonwealth not producing the medical examiner who prepared the report, denied the Petitioner the right to cross examine this individual. This factor was very important due to the entry wounds, that the deceased sustained.

This Court should conclude that the Petitioner was denied his constitutional right to a fair trial by the Commonwealth failure to produce this witness and trial counsel was ineffective for failure to object. Thus, concluding that the Petitioner is entitled to a new trial.

## CONCLUSION

This Court should consider these claims  in this amended petition as the record, has been remitted to this Court on January 26, 2010, from the appellate court and the instant petition was filed within (30) days of the record being remanded, as directed by Superior Court.

This Court should also appoint counsel, for the purpose of the evidentiary hearing, including contacting the Petitioner forthwith.

Respectfully submitted

Carnell Chamberlain

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the within petition was served on this _1st_ day of February 2010, by First Class U.S. Mail, upon the following:

PCRA UNIT
206 Criminal Justice Center
1301 Filbert Street
Philadelphia, PA 19107

Robin Godfrey, A.D.A.
3 South Penn Square
Philadelphia, PA 19107

DATE: _2-1-10_

Carnell Chamberlain

CC: Hon. Sheila Woods-Skipper

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the within Memorandum of Law was served on this *19* day of March 2013, by First Class U.S. Mail, upon the following:

District Attorney's Office
3 South Penn Square
Philadelphia, PA 19107

DATE: *3-19-13*

Carnell Chamberlain
GA-8233
Box A
Bellefonte, PA 16823